Addison,
January,
1837

Chapman
v.
Smith.

---

## Pliny Sabin *v.* Benjamin Stickney.

Addison,
January
1837

Under the statutes of the State of New York, on a sale of mortgage premises at public auction, the mortgagee may become a purchaser, and is accountable for only the sum bid, and may proceed at law on his bond for the balance.

It does not afford evidence of collusion or fraud, that he has sold the premises at an advanced price; that the persons to whom he sold were present at the public sale and did not bid, unless they were prevented from bidding by the procurement of the mortgagee.

This was an action of debt on a bond, conditioned for the payment, by the defendant to the plaintiff, of the sum of six hundred dollars.

The defendant pleaded, specially, in bar of the plaintiff's action, that the sum of six hundred dollars, mentioned in the condition of said bond, was the purchase money agreed by the defendant to be paid to the plaintiff for a house-lot, with a house and wagon-shop thereon—situated in the town of Cazenovia, in the county of Madison, and State of New York, which the plaintiff had conveyed to the defendant, and that, to secure the payment of said sum of six hundred dollars, in the manner, and at the times, specified in the condition of said bond, the defendant, on the 15th day of October, A. D. 1825, executed and

delivered to the plaintiff a mortgage deed of the same premises, which the plaintiff had conveyed to defendant, and that, on the same 15th day of October, A. D. 1825, the defendant paid to the plaintiff one hundred dollars, in part of said sum of $600, named in the condition of said bond—that the plaintiff retained possession of said wagon-shop, and the defendant went into possession of said house and the remaining part of said lot—that, afterwards, to wit, on the first day of March, 1826, the plaintiff put the defendant out, and took possession of the whole of said premises, and ever after retained possession of the same, until the 20th day of April, A. D. 1827, when said mortgaged premises were disposed of and sold for the benefit of the plaintiff, and by his direction, to Allen Dyer and Calvin B. Stowell, for the sum of five hundred dollars. And the defendant says, that, at the time the plaintiff took possession of said premises, and at the time the same were sold on the said 20th day of April, 1827, they were well worth in money six hundred dollars, which sum is much greater than the amount then due on said mortgage—and that the plaintiff, in fact, received, in the use and occupation of said mortgaged premises, previous to the sale of the same, on the 20th day of April, A. D. 1827, and by the proceeds of the sale of the same, at that time, to the said Dyer and Stowel, the whole amount, remaining due, of said six hundred dollars, mentioned in the condition of said bond, and the same, by the proceeds of said sale of said premises, and by the said use and occupation thereof, was fully paid and satisfied to the plaintiff.

The plaintiff, protesting that he did not, on the first day of March, A. D. 1826, or at any other time, put the said defendant out of possession of the said mortgaged premises, or take possession thereof, until after the defendant had voluntarily relinquished the possession of the said premises, replied, that the rents and profits of the said premises, during the time they were occupied by the plaintiff, as stated in the defendant's plea, did not exceed the sum of sixty dollars, which sum he is ready to apply on said bond. And that the said mortgage deed from the defendant to the plaintiff, to secure the payment of the sums of money, specified in the condition of said bond, contained a power for the sale by the plaintiff, of the said premises, therein described, in default of payment of the said sums of money specified in the condition of said bond or either of them, and that the said

mortgage deed, together with the said power of sale, had been duly recorded in the office of the County Clerk of the said County of Madison, and that the defendant, having made default in the payment of the said sums of money in the said condition of the said bond specified the plaintiff, afterwards, pursuant to the said power of sale contained in said mortgage, and pursuant to a notice of said sale, which had been published, weekly, for the term of six months, next previous to the said sale, in a newspaper published in the county of Madison, in which the said mortgaged premises are situated, did, on the · 20th day of April, A. D. 1827, sell, at public auction, the said mortgaged premises, to one Lemuel White, he being the highest bidder for the same, for the sum of two hundred dollars, which said sale, so made as aforesaid, was a fair, open and public sale, and was made conformably to the laws of the State of New York, and, after deducting the costs of foreclosure, and sale as aforesaid, left the sum of one hundred and sixty-nine dollars, to be applied on the said bond of the defendant, which sum, and, also, the said sum of one hundred dollars, paid by the defendant to the plaintiff, at the date of the said bond and mortgage, as stated in the defendant's plea, are endorsed on the said bond ; that the defendant and plaintiff, at the time of the execution of the said bond and mortgage, by the defendant, as aforesaid, were citizens of the State of New York, where the said bond and mortgage were executed, and where the said mortgaged premises are situated. And that, by the laws of the State of New York, the nett proceeds of the sale of the said mortgaged premises, so made, as aforesaid, and no more, were to be applied in payment of the said bond of the defendant ; without this, that the mortgaged premises were disposed of and sold to the said Dyer and Stowel, for the sum of five hundred dollars, for the benefit of the plaintiff, and by his direction, on the 20th day of April, A. D. 1827, as is stated in the defendant's plea, or at any time previous to that date.

The defendant rejoined, that the sale, mentioned in plaintiff's replication, was not made fairly and with good faith, but collusively and fraudulently, for that the premises were in fact sold to one Allen Dyer and Calvin B. Stowel, for the sum of five hundred dollars, which was paid by said Dyer and Stowel for said premises, of which sum four hundred and eighty dollars was paid to and received by the plaintiff, as the proceeds of the sale

of said premises—that, for the fraudulent purpose of having the premises bid in at said public sale, at a small sum, and to enable the bidder to pass the title of the premises to the said Dyer & Stowel, it was agreed by and between the plaintiff and one Lemuel White, previous to said public sale, that said White should, at said public sale, bid in said premises, and that the plaintiff should receive, instead of the sum said premises should be bid off for, the sum, that said premises should sell for, at private sale, and that, in compliance with said agreement, the said White, at said public sale, on said 20th day of April, did bid off said premises, at the sum of two hundred dollars, and on the 23d day of the same April, passed the title to said premises to the said Dyer and Stowel, and received from them, for the same, five hundred dollars, of which he paid to the plaintiff four hundred and eighty dollars, as the proceeds of said sale, and the defendant avers that the plaintiff, if he had been disposed so to do, might, at said public sale, have had the premises sold to and bid off by the said Dyer and Stowel at the same sum, that was paid for the premises by them at private sale, and that the plaintiff, at the time he made said agreement with said White, well knew that said premises could be sold, at any day, at or near the price, that was paid by the said Dyer & Stowel ; and that the proceeding of the said Sabin, in procuring the said White to bid off said premises, at two hundred dollars, was unfair and done in bad faith, for the purpose of enabling the plaintiff to apply on said bond the sum of two hundred dollars, only, instead of four hundred and eighty dollars, which he, in fact, received, as the proceeds of the sale of said premises—and that the plaintiff had the possession of the whole of said premises, from the first day of March, A. D. 1826, to the 23d of April, A. D. 1827, and of the wagon-shop, from the time of the sale to the defendant—and that the use and occupation of said premises, were during that time, of the value of one hundred dollars—and that the plaintiff, by the use and occupation of said mortgaged premises, and by the payment of the proceeds of the said sale, of said premises did, in fact, receive the full amount due on said bond.

The plaintiff sur-rejoined, that the said sale of the premises to the said Lemuel White, was made fairly and in good faith, at public auction, and conformably to the laws of the State of New York, nor could said premises be sold at said vendue for

Addison,
January,
1837.

Sabin
v.
Stickney.

more than the said sum of two hundred dollars, and, that, although true it was that the said mortgaged premises were bid off at said vendue by the said White, for the benefit of the plaintiff, yet that by a certain statute law of the State of New York, entitled " an act concerning mortgages," which was in full force, before, and at the of the time said sale of the said mortgaged premises to the said White, it is provided " that no title to mortgaged premises, derived from any sale, made in virtue of a special power, for that purpose in the mortgage contained, shall be questioned, impeached or defeated, either at law or in equity, by reason that the mortgaged premises were purchased in by the mortgagee, or his or her assignee, or by his her or their representatives, or for his her or their benefit or account, provided always, that the sale was, in every other respect, regular, fair, and with good faith," and that the nett proceeds of said sale to said White, together with all payments, made by the defendant to the plaintiff, including the rents and profits of said premises, during the time they were occupied by the plaintiff, as stated in the defendant's plea and rejoinder, do not exceed the sum of three hundred and thirty dollars, and that the balance of said debt is due and unsatisfied to the plaintiff.

To the plaintiff's sur-rejoinder the defendant answered, admitting the existence of the statute of the State of New York, as set forth in the plaintiff's sur-rejoinder, and re-affirming the matters set forth in the rejoinder, and tendered issue to the country, in which the plaintiff joined.

On the trial before a jury, in the county court, the defendant introduced depositions of witnesses, tending to prove that the mortgaged premises were worth much more than the sum for which they were sold, under the power contained in the mortgae, and that White bid off the premises, under an agreement with plaintiff, that he (White,) would sell them at private sale, and account to plaintiff for what they should sell for, and that he sold them for $500. Other depositions were read, stating that the public sale, upon the mortgage, was fairly conducted, and that several persons made bids.

Upon this state of the evidence, the court directed the jury, that, by the statute of New York, which was read in the case, it was competent for the plaintiff to become the purchaser of the mortgaged premises, at the public sale, either in his own name or through another, and that _that_ circumstance did not vi-

tiate the sale or subject the plaintiff to account for the avails of the ultimate sale of the property, provided the sale at auction was without collusion and *bona fide ;* that the circumstance that those, who purchased the estate of the plaintiff, at private sale, were present at the auction, and did not bid, did not, standing by itself, and unconnected with proof that their not bidding was by the procurement of the plaintiff, legally tend to shew the sale collusive ;  and that, although the inadequacy of price had a tendency to establish collusion, yet they would not be justified in finding the sale collusive on that ground alone, and that there was nothing else in proof, which had a legal tendency to shew collusion.   Upon this decision a verdict was taken for the plaintiff, the value of the rents or use of the property being agreed on by the parties, and applied in payment on the bond.   The case came up to this court, on exceptions by defendant.

*H. Seymour, for defendant.*

In the State of New York, the law on this subject is, that if the mortgagee sells the mortgaged premises, in pursuance of a power for that purpose, and sufficient, is not produced to pay the debt, an action lies for the balance.   If the amount is raised, the debt is paid, and if there be a surplus, it belongs to the mortgagor.   If the mortgagee simply re-enters, but does not sell, and the property is of sufficient value to satisfy the debt, the debt is paid.   *Spencer* v. *Harford,* 4 Wend. 384.   *Morgan* v. *Plumb,* 9 do. 292.   *Case* v. *Boughton,* 11 do. 109.   *Lansing* v. *Goelet,* 9 Cowan. 346.

It appears that on the first of March, 1826, about four and a half months after the purchase, defendant abandoned the premises and plaintiff, at the same time re-entered upon, and appropriated them to his own use.   It does not appear that defendant ever after made any claim to the premises, or that he was ever again in the State of New York.   The value of the property at that time was $600, and the sum due on the mortgage but $500 and interest four and a half months.   The plaintiff had then received one hundred dollars of the purchase money, and had re-possessed himself of the property he had sold, and he could take what further steps he pleased, only for the purpose of extinguishing the equity of redemption.   But it would seem that, in justice, all further pecuniary claim on the defendant was extinguished.   And the law of the State of New York is so that the re-entering of the plaintiff, and appropriating the mortgaged premises to his own use, was a satisfaction and payment of the debt.

Plaintiff could not, by any act of his, revive the debt or any part of it, and the subsequent sale at public vendue, in April, 1827, was of no use and could have no effect on the rights of the parties, other than to cut off the equity of redemption, and the court should have so instructed the jury.

If plaintiff's debt could be considered a subsisting claim, after March, 1826, defendant then insists, that the sale of said premises in April, 1827, produced the sum of $480, and that plaintiff actually received the sum of $480, as the proceeds of said sale, which he should have applied as payment on said debt. The sum of $200, at which the property was bid in by the plaintiff's agent, (White,) at the vendue sale, was not the sum, which the plaintiff received and realized from the sale of this property.

It is the duty of the mortgagee to sell for the best price. If the facts in this case show that plaintiff did not do this at the vendue sale, the sum, at which the property was bid in, ought not to be taken as the standard or measure of its value, nor the sum for which plaintiff should account. 18 Johns. 110. 9 Cowen, 402, 384. 2 Gallison, 155. The sale to Dyer & Stowell, two days after the vendue sale, was, in fact, the sale, by which plaintiff converted the mortgaged premises into money, and furnishes the best evidence of the value of the property.

The sum, at which the property was bid off, is not to be taken as the sum, for which the mortgagee is to account, only so far as it may afford the best evidence of the true value of the property. There is no positive law making the sum bid, the sum for which the mortgagee shall account.

The act, recited in the pleadings, provides only that the title shall not be questioned, &c. by reason of the mortgagee, or his agent being the purchaser. The sum, for which the mortgagee shall account, is left to be governed by the principles applicable to sales by administrators, guardians, and other trustees. 4 Kent Com. 167. 4 Johns. Ch. Rep. 305. 4 Wend. 674. Mad. 110. The title may pass by the sale, and yet the mortgagee be holden to account for a larger sum than that, which the property was bid off at. 5 Johns. Ch. Rep. 444. 10 Johns. Rep. 197. 14 do. 442.

In this case inadequacy of price is not alone relied on. Connected with it is the fact, that Dyar & Stowell were present at the vendue and did not bid, and that, within two days after, they

paid $500 for the same property, and the fact that the plaintiff, whose duty it was to make the most of the property, for the benefit of the defendant, received to his own use the $480, produced by the sale of the property to Dyer & Stowell.

These facts are inconsistent with any other supposition, than that the plaintiff contrived to have the property bid in at the vendue for a small sum, or that, by a culpable omission of duty, he permitted it. The court should have instructed the jury, that these facts tended to prove fraud in the plaintiff, or such unfairness and want of good faith in his proceedings, as would justify them in finding that the sale of the mortgaged premises produced to the plaintiff $480 in payment of his debt.

*Starr & Bushnell, and C. Linsley, for plaintiff.*

I. Fraud or collusion, when alleged to avoid or invalidate any transaction, must be proved by showing some collusive or fraudulent acts of the party, and are not to be inferred from mere casual or negative facts. The acts or words of a third person, or an alleged *particeps criminis*, cannot be admitted in evidence until a privity between him and the party be shown. *Windover et al.* v. *Robbins*, 2 Tyler, 4. *Spencer* v. *Harford*, 4 Wend. 384. *Case* v. *Boughton*, 11 do. 106. *Morgan* v. *Plumb*, 9 do. 292. *Jackson* v. *Henry*, 10 Johns. Rep. 185. *Bergen et al.* v. *Bennet*, Caines' Cas. 1. 4 Kent's Com. 146, 148, 190, and 191. *Jackson* v. *Crafts*, 18 Johns. Rep. 112.

II. Mere inadequacy of price, on a sale of property at auction, is not, by itself, a fact, from which fraud or collusion can be inferred, even in the case of the sale of personal property of small amount, and, more especially, it is not, in the case of the sale of real estate of considerable value.

III. Nor is the fact, that persons, who were present at the auction, contracted some days after, for the purchase of the same property, at a higher price, a ground to infer fraud or collusion in the auction sale. The terms of payment, on which the purchase was made by those persons, are not stated in the depositions. The purchase might have been made on an extended credit.

Supposing the charge of the Judge upon the evidence to have been erroneous, the court will not grant a new trial, unless the evidence be such, as, with a correct charge, will probably turn the verdict the other way. See *Goodrich* v. *Walker*, 1 Johns. Cas. 250.

The law of the State of New York is to govern the case, the

parties being citizens of that State, when the contract was made, and it being there to be executed. *Prentis et al.* v. *Sawyer*, 13 Mass. Rep. 23. *Blanchard* v. *Russel*, do. 4. *Blake* v. *Wheaton*, 5 do, 509. *Grimshaw* v. *Bender et al.* 6 do. 157. *Winthrop* v. *Carleton, jr.* 12 do. 4. *Barrell* v. *Benjamin*, 15 do. 354. *Pearsall* v. *Dwight*, 2 do. 84.

Addison, January, 1837.

Sabin v. Stickney.

The opinion of the Court was delivered by

WILLIAMS, Chief J.—The pleadings have extended to a very unnecessary length; so much so, as to almost smother the controversy. The whole question, in issue, might have been presented on a plea of payment. The controversy between the parties is, whether the bond in suit was paid and satisfied, by the proceedings on the mortgage, had in the State of New York; and to this end, the defendant now contends, that, when the plaintiff entered into possession of the premises, mortgaged as collateral security for the bond in suit, the bond itself was paid, if the premises were of sufficient value; or that the jury would have been warranted in finding the sale of the mortgaged premises, a sale for five hundred dollars, and the plaintiff must be considered as having received that sum on the bond.

On the first position assumed by the defendant, it is sufficient to remark, that it is contrary to the whole law on the subject of mortgages. The mortgagee may enter in possession of the mortgaged premises, and continue in possession until his debt is satisfied. The authorities, which have been read, do not countenance the idea, that the law is any different in the State of New York, or that a mere taking possession of mortgaged premises, without foreclosure, subjects the mortgagee to account for the value.

On the second position assumed, it becomes necessary to consider the effect of a sale of mortgaged premises, under the statute of the State of New York, where the mortgagee becomes the purchaser. The statute must intend something more than has been attributed to it, in the argument; *i. e.* merely to enable the mortgagee to pass the title, freed from the equity of redemption. It cannot be that, as between the parties, a sale under the statute is to be treated as a strict foreclosure. The creditor cannot be held accountable for the value of the premises, when he sells under a power of sale, whether the value is realized or not. If the creditor is accountable for any thing more than the amount of the sale, even when he becomes a purchaser,

Addison,
January,
1837.

Sabin
v.
Stickney.

it must be on the ground, that he is to be treated as a trustee for the mortgagor.   There is, however, but very little similarity between the character of a trustee and mortgagee.   The mortgagee, contrary to the general rule, holds in trust for himself until the debt is discharged ; but, after that, he may be said to be trustee for the mortgagor.   Whether, without the provisions of the statute of the State of New York, the mortgagee, who sold under a power of sale, could become a purchaser, without being held accountable for the value, or be subject to have the premises re-sold, may be questionable.   From the case of *Webb* v. *Roche*, 2 Sch. & Lefr. 673, it was laid down in the first edition of Mad. Chancery 91, that the rule, which prohibited a trustee from becoming a purchaser of a part, or the whole of the estate, of which he was trustee, was not applied as between mortgagors and mortgagees.   But in the second edition, from the same case, as also from the case of *Gubbins* v. *Creed*, 218, of the same book, it was considered that it did apply.   It is, however, certain that, under a decree of sale, as a sale in bankruptcy, the mortgagee may, under an order from the chancellor, obtain leave to bid at the sale and hold the mortgagor accountable for the sum not raised by the sale.   *Ex parte Marsh*, 1 Madd. Rep. 148.

It appears to us that such must be the effect of a sale, under that part of the statute of the State of New York, which authorises the mortgagee to become a purchaser, and declares that the sale shall not be questioned in law or equity, on account of his being a purchaser.   The interest of both the mortgagee and mortgagor are sufficiently protected, by requiring that public notice shall be given of the sale.   Both of the parties may be present, and use all lawful endeavors to enhance the price.   As to the extent of the debt, at least, both are interested that the sale should raise that amount.

We are fully satisfied, therefore, with the directions given by the County Court ;—that the sale was not vitiated in consequence of the plaintiff being a purchaser, either in his own name or through another; nor was the plaintiff subject to account for the avails of the subsequent sale, provided the sale at auction was without collusion and *bona fide*.   It would result from this, that the other part of the direction was also correct, viz. " that the circumstance, that those, who purchased the es-
" tate of the plaintiff at private sale, were present and did not

" bid, did not tend to show the sale collusive, unless they were
" prevented from bidding by the procurement of the plaintiff."

From an examination of the depositions, we can find nothing
tending to shew the sale collusive, or that the plaintiff was guilty
of any fraud, or used any endeavors to prevent either the de-
fendant or any one else from bidding at the sale. According to
the opinion above expressed, he might become a purchaser, and,
having purchased, was at liberty to dispose of the property, in
such manner, or for such prices as he thought proper. In the
absence of any fraud, he cannot be charged with any greater
sum than was bid at the auction.

The direction, therefore, that there was nothing in proof,
which had a legal or legitimate tendency to shew collusion, was
strictly correct. The judgment must, therefore, be affirmed.